**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ULINE, INC.,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 04 C 1954 |
| | ) |
| **JIT PACKAGING, INC.,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Uline, Inc. ("Uline") and defendant JIT Packaging, Inc. ("JIT") are competitors in the packaging and shipping materials business. A dispute arose between them concerning a marketing strategy JIT used to favorably compare its products and prices to those of Uline. JIT sued Uline in Illinois state court, and Uline brought claims against JIT in this court alleging JIT engaged in unfair competition, violated the Illinois Deceptive Trade Practices Act and the Illinois Consumer Fraud and Deceptive Business Practices Act, and committed trademark infringement. JIT, in turn, dismissed its Illinois state court action and brought counterclaims against Uline before this court that include (I) tortious interference with contract; (II) tortious interference with prospective economic advantage; (III) defamation *per se*; (IV) commercial disparagement; (V) unfair competition; and (VI) deceptive trade practices and consumer fraud and deceptive business

practices. Uline seeks summary judgment on these counterclaims. I grant that motion.

I.

Summary judgment is appropriate where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp*, 165 F.3d 1087, 1090 (7th Cir. 1999); FED. R. CIV. P. 56(c). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

II.

The undisputed facts in this case are as follows: In February of 2004, JIT entered into agreements with Google, Inc. ("Google") and Overture Services, Inc. ("Overture") to use their online advertising services. The parties both characterize these agreements as "contracts." Both Google and Overture offer a service in which their customers may arrange for their advertisements to appear on Google and/or Overture's websites in response to a user's search query (for example, a user of Google's website who enters a search for "books" might be directed to a webpage listing advertisements for booksellers). For Overture, these advertisements are called "Sponsored Listings"; Google calls its advertising program "Adwords."

2

As part of these agreements, JIT agreed to certain terms and conditions included in various documents. JIT's agreement with Google included terms set forth in Google's "Editorial Guidelines for Online Advertising" ("editorial guidelines"), Trademark Policy, and Trademark Complaint Procedure. Google's editorial guidelines with respect to "Ad Content" state:

> As a business, Google must make decisions about where we draw the line in regards to the advertising we accept. We, therefore, may not accept ads or keywords containing or relating to certain products or services. We reserve the right to exercise editorial discretion when it comes to the advertising we accept on our site, as noted in our advertising terms and conditions.

Google's editorial guidelines also direct advertisers that "[i]f your ad text contains comparative language regarding competitors, support for this claim must be displayed" on the website to which the advertisement directs customers.

The "Trademark Complaint Procedure" that Google has adopted specifically states, with respect to trademark complaints for United States trademarks:

> When we receive a complaint from a trademark owner, we will only investigate whether the advertisements at issue are using terms corresponding to the trademarked term in an advertisement's content. If they are, we will require the advertiser to remove the trademarked term from the content of the ad and will prevent the advertiser from using the trademarked term in ad content in the future.

That policy also sets forth a procedure for trademark owners to follow if they "have an objection to an advertiser's use of a term corresponding to your trademark in ad content that is consistent with the foregoing." The policy directs that such trademark owners "please provide the following information in a signed letter on company stationary" and sets forth certain information a trademark owner should provide.

JIT's agreement with Overture is governed by Overture's "Advertiser Master Services Terms and Conditions," ("advertiser terms") and "Program Terms." The advertiser terms include a provision concerning Overture's acceptance of proposed "Sponsored Listings" that states:

> Overture reserves the right to truncate, edit, refuse, reject or remove any listing at its discretion at any time. Overture does not guarantee that your listings will be placed in or available through [Overture's websites], and Overture reserves the right not to place your listings and to stop placing or to remove your listings at any time for any reason. Final decision as to inclusion, relevancy, placement and the like will be at Overture's sole discretion.

The advertiser terms also include a section entitled "Your Site" that provides that "You" [the advertiser] represent, warrant and covenant that: (i) all information you provide in connection with the Agreement and on your Web site is, and will be updated to remain, current and accurate." This is followed later by a "Termination" section specified that "Overture may, in its sole discretion, . . . discontinue or suspend your participation in all

4

or part of any Program."[1]  Reasons for suspension "may include, without limitation, if Overture believes that you violated the Agreement or other policies or guidelines of Overture."

Overture also has a trademark policy and procedure (entitled "Raising Trademark Concerns about Precision Match™ Listings") that provides:

> Advertisers sometimes bid on search terms that are the trademarks of others. For bids on search terms in Overture's Precision Match service, Overture requires advertisers to agree that their search terms, their listing titles and descriptions, and the content of their Web sites do not violate the trademark rights of others.

This policy also states that users may only bid on search terms that are trademarked by another party if the advertiser presents content on its website that "refers to the trademark or its owner or related product in a permissible nominative manner without creating a likelihood of consumer confusion (for example, comparative advertising, sale of a product bearing the trademark, or commentary, criticism or other permissible information about the trademark owner . . . )."  Overture directs customers who "have a concern that a search term associated with an advertiser's listing is an improper use of a term that is a trademark" to provide certain information "[i]n order to assist Overture in expeditiously

---

[1] This section defines "termination, suspension or discontinuation" to include "without limitation, removal of your listings."

addressing your concern." Overture's policy states that "Overture will review the advertiser's listing for compliance with our relevancy guidelines and, if appropriate, Overture will remove the advertiser's listing or the content of the listing's title or description will be modified."[2]

The parties dispute whether the terms of either the Google or Overture agreements allow an advertiser to engage in comparative advertising. This is an issue because, pursuant to these agreements, JIT submitted online advertisements to both companies for those companies to run on their websites.[3] The text of both advertisements included the phrase "Save Up to 70% Over ULINE." Google and Overture initially accepted this text.

Uline also had agreements with both Google and Overture to use their advertising services. JIT became concerned about JIT's advertisements, and submitted complaints both to Google and Overture. Jake Peters ("Peters"), the Vice President of Internet and Advertising for Uline, called and complained to Uline's Google

---

[2]It is not clear whether this policy is part of Overture's "agreement" with its advertisers or simply a stated policy.

[3]Both Google and Overture allow clients to select certain search terms that, if entered by a user, will return that client's advertisements. Neither party presents statements of fact that address what, if any, search terms JIT selected to associate with its advertisements using either service. The text of an email sent from Google to JIT suggests that at least some of the search terms JIT selected to use with Google's service contained the word "Uline" (including the keywords "boxes uline," "company uline," "packaging uline," "shipping uline" and "uline corporation").

6

account representative. Peters testified that he informed the representative that JIT was using Uline's name in its advertisements, and complained about Google's editorial policies, which he felt were unfair. He "admonished" the representative that Google had not allowed Uline to use certain keywords which he felt were appropriate, but that Google was not strict enough in investigating inappropriate advertising by Google's customers which harmed Uline. Peters testified that he did not threaten to pull Uline's business with or initiate a legal proceeding against Google.

Following Peters' conversation with Google, a Google representative sent an email to JIT notifying it that certain of their advertisements were "suspended" or "disapproved" because "one or more of [JIT's] ads or keywords does not meet [Google's] guidelines." The email explained that, "[d]ue to trademark complaints, we do not allow advertisers to use certain trademarked terms as ad text for their Google AdWords campaigns." The email required JIT to remove the term "Uline" from all of its keywords and advertisements. Google subsequently removed the word "Uline" from JIT's advertisements and keywords, replacing it with "the U" instead.

Uline also sent a letter to Overture complaining about JIT's advertisements on its website. Although this letter did note that Uline had a trademark for the term "Uline," the focus of the letter

was on the perceived "false and misleading" character of JIT's advertisements with Overture. The letter stated that JIT "makes the claim 'save up to 70% over Uline.' Many of these comparisons are inaccurate or misleading. Those deemed misleading are due to differences in product quality/material composition." The letter included a paragraph explaining why, in Uline's view, a comparison on JIT's website of one of its box types and one of Uline's was inaccurate. It also contained an example, in Uline's opinion, of how JIT's "Save up to 70% over Uline" claim was inaccurate at least with respect to the prices listed on JIT's website for certain types of boxes and a type of tape.[4]

As with Google, Peters testified that Uline did not threaten to stop its business with or to take legal action against Overture. Following this letter, Overture sent an email to JIT stating that Overture "received notice that material available through your website . . . contains false and/or misleading content." The letter gave JIT ten days to contest this claim or notify Overture that it had removed the content at issue from its website. JIT subsequently removed the word "Uline" from its advertisements but Overture informed JIT that this was not sufficient; Overture viewed

---

[4]Prior to this letter, Peters also sent an email to an Overture employee that made substantially the same allegations as those in Uline's letter, though that email also included a statement that Uline was considering a lawsuit against JIT related to the statements on JIT's website.

the issue as being one of false advertising within the website itself.[5]

As a result of Google and Overture forcing JIT to change its advertising, JIT contends that it lost customers. JIT has presented sales numbers which show that following the change in its advertising there was a decline in web-based orders for its products. During his deposition the president of JIT, Michael Hrbacek ("Hrbacek"), testified that he was not aware of any customer or potential customer "that was thinking about or contemplating buying materials from JIT-buying products from JIT who because of Uline's actions decided not to do so." In its response to Uline's statement of facts, JIT contends that "the customers it lost are customers seeking to buy packaging materials through use of the Google and/or Overture search engines."

JIT also alleged in its amended counterclaims that "Uline has been spreading rumors about JIT in the industry." The only specific "rumor-spreading" of which JIT has presented evidence, aside from the statements Uline made to Overture and Google, is a

---

[5]The record also includes a partial chain of emails which followed that original email. It appears that someone from JIT responded to Overture stating that Uline separately corresponded with JIT and "provided JIT with only 3 to 6 items that could legitimately qualify as containing an inaccurate pricing comparison. JIT did agree with ULINE and made adjustments to satisfy them." Overture then responded that "this issue extends beyond the information in your titles and description. For example, the mail page of yoru [sic] Web site claims 'Always save up to 70% over Uline' We are still going to need a response to our original communication."

statement that Brian Uihlein ("Uihlein") of Uline purportedly made to Bill Raubolt ("Raubolt") of Weyerhaeuser, a company that sold boxes to both Uline and JIT.[6] Raubolt testified in his deposition that he had heard about radio advertisements JIT was running "attacking Uline" and he asked Uihlein if he was aware of the advertisements. Brian Uihlein testified that Raubolt may have said "Who are these guys that - you know, I hear on the radio saying they're up to 70 percent less than you?" Uihlein testified that "maybe" he responded, "'We don't even make 70 percent on our product, so I don't know how that could happen,' or something along those lines." Raubolt further testified that he could not remember exactly what Uihlean had said, but that Uihlein said "something like that, maybe saying that, 'Well you know, they may have a hard time paying their bills,' or something like that.'" Raubolt testified that he may have discussed this conversation with a few other Weyerhaeuser employees, but he did not recall what specifically he may have said to them. After all of these events had concluded, this litigation commenced.

---

[6]In addition to Weyerhaeser, Hrbacek testified that he had "heard rumors from other vendors" that Uihlein had stated that JIT "was in trouble." Hrbacek could not identify which vendors he had heard this from and could not recall "word-for-word" what the substance of the rumors was.

III.

JIT's first counterclaim against Uline is for common law tortious interference with contract. Under Illinois law, to establish this claim JIT must show (1) it had an enforceable contract; (2) of which Uline was aware; and (3) Uline induced a third party (here Google and Overture) to breach that contract; (4) successfully; (5) resulting in damages. *Dresser Indus., Inc. v. Pyrrhus AG*, 936 F.2d 921, 934 (7th Cir. 1991) (citing *Feldman v. Allegheny Int'l, Inc.*, 850 F.2d 1217, 1224 (7th Cir. 1988)). *See also HPI Health Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 137 Ill. Dec. 19, 23, 131 Ill. 2d 145, 154-55, 545 N.E.2d 672, 676 (1989) (internal citations omitted).

Uline argues that, even taking the facts in the light most favorable to JIT, JIT cannot show that Google and Overture breached their contracts with JIT. JIT argues that there is a genuine issue of material fact whether Google breached its agreement by not following its own trademark complaint procedure and editorial guidelines, and whether Overture breached its agreement with JIT by not following its trademark policies and complaint procedures. However, the parties appear to agree on the substance of the agreements between Google and Overture,[7] and on the specific

---

[7]Uline does contest whether the specific versions of Overture and Google's policies and guidelines as presented by JIT were the same versions in place at the time JIT entered into agreements with these companies, but still makes its arguments based on the versions that JIT has presented. For purposes of this motion for

actions taken by Overture and Google in response to Uline's complaints. Thus, there is no dispute for a finder of fact to resolve. *Bennett v. Local Union No. 66, Glass, Molders, Pottery, Plastics and Allied Workers Int'l Union, AFL-CIO, CLC*, 958 F.2d 1429, 1434 (7th Cir. 1992) ("The interpretation of an unambiguous contract is a question of law, as is the question whether the contract is unambiguous.").

Here, Google has a specific policy that states that if, after receiving a complaint from a trademark owner, Google determines that "the advertisements at issue are using terms corresponding to the trademarked term in the advertisement's content," Google will "require the advertiser to remove the trademarked term from the content of the ad and prevent the advertiser from using the trademarked term in ad content in the future." In general, Google's policy also states that it "reserve[s] the right to exercise editorial discretion when it comes to the advertising we accept on our site, as noted in the advertising terms and conditions."

JIT's only articulated argument regarding how Google breached its contract is that Google wrongly accepted a complaint from Uline that did not comply with the policies set forth in Google's "Trademark Complaint Procedures" document. However, the language

summary judgment, taking the facts in the light most favorable to JIT, I will assume that these policies govern JIT's agreements with Overture and Google.

12

of the complaint procedures merely directs trademark owners to "please provide the following information" in a certain format. It does not state that it will only accept complaints that comply with that format. It does not specifically allow for any input on its trademark decisions from the advertiser. And it unequivocally states that it will remove any terms from advertisements that it determines are trademarked.[8] Google did not breach its contract either by accepting Uline's oral complaint or by requiring JIT to remove the word "Uline" from the content of its advertisements.

The same is true with respect to Overture. After Uline complained that JIT's advertisements and website contained false and misleading information, Overture gave JIT ten days to remove that content from its website or contest the complaint. The letter Overture sent JIT did not reference a potential trademark violation, so those portions of Overture's policies relating to trademark are not relevant here. Since there is no evidence that Overture's real concern was anything other than what was stated in its letter to JIT, and JIT does not argue that this letter was a pretext for any other concern Overture had with JIT's

_____

[8]JIT contends that Google's policies allow for comparative advertising because of the language in its editorial guidelines concerning comparative claims. The comparative advertising policy and the trademark policy are easily reconciled with one another, however. An advertiser may make legitimate comparative claims about its competition in an advertisement without using trademarked terms. To comply with both Google policies, an advertisement could not use the language "save up to 70% over Uline" but could use the language "save up to 70% over the competition."

13

advertisements, the only question is whether Overture had the authority under its contract to require JIT's advertisements and website to be accurate. Here, even taking the facts in the light most favorable to JIT, there is no dispute that under the terms of the contract Overture had the right to take the action it did against JIT. Overture's policy specifically states that it "reserves the right . . .to remove your listings at any time for any reason." As an advertiser, JIT agreed that the information contained on its website would be accurate. Overture received a complaint that information on the website was inaccurate or misleading. Overture then sent an email informing JIT that it had received a complaint about this content, and giving JIT ten days to appeal, correct the problem, or face suspension of access to its website from Overture's website. Nothing in Overture's email to JIT said anything about use of the term "Uline" or a violation of its trademark policy. Instead, the email specifically stated that JIT's website contained "false and/or misleading content." Given these undisputed facts, JIT cannot show that Overture breached its agreement with JIT.

Because JIT cannot show that either Overture or Google breached their agreements with JIT, JIT's tortious interference with contract claim must fail.[9]

[9]Uline also argues that JIT's claim must fail because interference with a contract in order to protect one's trademark rights protects that interference from a tortious interference claim. Because I find that JIT cannot show that Overture or Google

14

IV.

JIT has also brought a claim for tortious interference with prospective economic advantage, arguing that Uline's complaints to Google and Overture led to the loss of "consumers who seek to buy packaging products through the use" of Google and Overture's services. To establish this cause of action JIT must be able to show 1) it had a reasonable expectation of entering into a valid business relationship; (2) Uline knew of JIT's expectancy; (3) Uline purposefully interfered to prevent JIT's legitimate expectancy from being fulfilled; and (4) JIT suffered damages resulting from such interference. *See Burrell v. City of Mattoon*, 378 F.3d 642, 652 (7th Cir. 2004) (citing *Delloma v. Consolidation Coal Co.*, 996 F.2d 168, 170-71 (7th Cir. 1993); *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 511, 154 Ill. Dec. 649, 657, 568 N.E.2d 870, 878 (1991); *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 482, 230 Ill. Dec. 229, 241, 693 N.E.2d 358, 370 (1998)).

Uline argues that this claim cannot survive summary judgment because JIT must identify specific potential customers "with whom it was contemplating entering into a business relationship, but decided not to do so" or that Uline caused specific JIT customers to stop doing business with JIT. JIT responds that it need only identify a "class of prospective customers" to meet this element of

---

breached their contracts with JIT, I need not address this argument.

15

the test. In support of this argument, JIT cites *F:A J. Kikson v. Underwriters Labs.*, No. 02 C 8265, 2005 WL 736651 (N.D. Ill. March 31, 2005). In that case, the court held that the plaintiffs' tortious interference with prospective economic advantage claim could survive summary judgment where the record showed that the plaintiffs had a business expectancy "with an identifiable class of prospective customers of chimney lining and repair products in the United States." *Id.* at *9. That decision in turn cited the decision of the appellate court in *Parkway Bank and Trust Co. v. City of Darien*, 2 Ill. Dec. 234, 43 Ill. App. 3d 400, 357 N.E.2d 211 (Ill. App. Ct. 1976). In that case, the appellate court affirmed the dismissal of a tortious interference with prospective economic advantage claim brought where the defendant re-zoned land owned by the plaintiff. The appellate court stated that a tortious interference claim, under Illinois state pleading standards, requires an allegation that the defendant interfered with a business relationship between plaintiff and "specific third parties or any clearly identifiable group of third parties contemplating prospective contractual arrangements with the plaintiff." *Id.* at 237-38, 43 Ill. App. 3d at 403, 357 N.E.2d 214-15.

I could find no Seventh Circuit or Illinois Supreme Court precedent addressing what a party must show in order to survive

summary judgment on a tortious interference claim.[10]  At least one

Illinois appellate court has held, however, that to survive summary

judgment a plaintiff must identify a specific third party with whom

the plaintiff would have done business but for the interference of

the defendant.  *See Assoc. Underwriters of Am. Agency, Inc. v.*

*McCarthy*, 292 Ill. Dec. 724, 733, 356 Ill. App. 3d 1010, 1020, 836

N.E.2d 1160, 1169 (Ill. App. Ct. 2005) ("A plaintiff states a cause

of action only if he alleges a business expectancy with a specific

third party as well as action by the defendant directed toward that

third party.").[11]  Other district courts have also determined that

---

[10]In ruling on Uline's motion to dismiss JIT's amended
counterclaims, I relied on *Cook v. Winfrey*, 141 F.3d 322 (7th Cir.
1998) in which the Seventh Circuit held that for a tortious
interference with prospective economic advantage claim to survive
a motion to dismiss, a party need not specifically identify a third
party with whom it would have had a potential relationship.  *Id.* at
328.  The Seventh Circuit further stated in its opinion in *Cook*, in
dicta, that a more general statement that the plaintiff had a valid
business expectancy with an unspecified third party would allow the
plaintiff to later prove a set of facts "including the identity of
the parties or class of parties that would entitle him to relief."
*Id.*  The cases cited by the defendant and referenced by the Seventh
Circuit in *Cook* in support of a "class of parties" satisfying the
test for a tortious interference claim were cases decided on motion
to dismiss.  *See id.* (citing *River Park, Inc. v. City of Highland*
*Park*, 217 Ill. Dec. 410, 418, 281 Ill. App. 3d 154, 166, 667 N.E.2d
499, 507 (Ill. App. Ct. 1996), *Parkway Bank & Trust Co.*, 2 Ill.
Dec. at 237-38, 43 Ill. App. 3d at 403, 357 N.E.2d at 214-15).  The
Seventh Circuit noted in *Cook* that the argument between the parties
about the appropriate standard "strays rather far afield from the
minimal requirements of federal notice pleading."  *Cook*, 141 F.3d
at 328.

[11]This opinion cites *Schuler v. Abbot Labs.*, 203 Ill. Dec. 105,
265 Ill. App. 3d 991, 639 N.E.2d 144 (Ill. App. Ct. 1993), in which
the court determined that to survive a motion to dismiss in
Illinois state court a party needed to allege "a business

17

the standard for summary judgment requires a showing of specific third parties with whom the plaintiff would have done business. *See, e.g., Republic Tobacco, L.P. v. N. Atl. Trading Co.,* 254 F. Supp 2d. 1007, 1012 (N.D. Ill. 2003) (granting summary judgment on tortious interference claim where the plaintiff "fail[ed] to provide evidence of any *specific* customers who terminated or altered their relationship with [the plaintiff] as a result of any conduct" by the defendant) (emphasis in original). In *Celex Group, Inc. v. The Executive Gallery, Inc.,* 877 F. Supp. 1114 (N.D. Ill. 1995), the court granted summary judgment where the plaintiff did not even "attempt[] to identify any specific third parties with whom it had a reasonable business expectancy" but rather relied on "past and present corporate executive customers" as an "identifiable class." *Id.* at 1125. The court recognized that a showing of a class of prospective customers might be sufficient to survive a motion to dismiss, but held that on a motion for summary judgment a plaintiff "must come forward with its evidence and identify particular third parties with whom it had a reasonable expectancy of entering into business." *Id.* The court also noted that requiring the identification of a specific party makes sense because a party also must show that a particular contractual or business relationship is contemplated. *Id.* at 1126 n.19. Were it

---

expectancy with a specific third party." *Id.* at 108, 265 Ill. App. 3d at 994, 639 N.E.2d at 147.

not for this requirement, "liability under a theory of tortious interference with prospective business expectancies would be virtually without limit and impossible to calculate." *Id.*

Here, JIT alleges that it had a valid business expectancy of entering into business relationships with (1) "the class of consumers seeking to buy packaging materials through the use of the Google and/or Overture search engine(s) and (2) the reasonable expectancy of maintaining its existing business relationships with Google and Overture in the manner in which they existed prior to Uline's interference." With respect to the "class of consumers," even examining the evidence in the light most favorable to JIT, JIT has presented no evidence of specific customers with whom it would have entered into a business relationship but for Uline's complaints to Google and Overture. JIT does present an expert report that tracks the "click-through rate" (the number of users who "clicked" on JIT's advertisements in order to go to JIT's website) from JIT's advertisements with Google and Overture and determined the relationship between "click-throughs" to JIT's website and JIT's actual and projected sales. The expert concludes that JIT had significantly more "click-through" sales before its ads were changed, but it does not identify any specific customers that would have purchased its products but for Uline's actions. This evidence alone, even if true, is not enough to show a specific customer or customers who would have purchased products from JIT

but for Uline's actions. To allow a party to survive summary judgment on this evidence alone would allow liability "virtually without limit." *Celex Group,* 877 F. Supp. at 1125.

JIT also argues that both Google and Overture were specific parties with which it would have done business (by "being able to pursue its lawful comparative advertising campaigns with Google and Overture") but for Uline's actions. Phrased in this way, this claim is really a reconfiguration of JIT's tortious interference with contract claim. Uline is correct that, even taking the facts in the light most favorable to JIT, there is no evidence that Uline did anything which disrupted JIT's contractual relationship with Google and Overture. Google's editorial policy specifically stated that, upon a complaint, it would remove trademarked terms from an advertiser's advertisements. Overture specifically stated that it would suspend any advertising where the site to which the advertising was linked contained false or misleading information. Based on Uline's complaints, it suspended JIT's account. There is no evidence that Uline's actions disrupted JIT's "legitimate" expectancies concerning its relationship with Google and Overture.[12] Therefore, Uline is entitled to summary judgment on this claim.

---

[12]There is also no evidence in the record that the statements Uline made to Google and Overture were false, and JIT has not directly argued that these statements were false. It is undisputed that Uline holds a trademark on the term "Uline," so Uline was truthful with Google. For an analysis of why there is no evidence that the statements Uline made to Overture were false, see Section VII *infra.*

20

JIT's defamation *per se* claim centers around a statement that Brian Uihlein of Uline purportedly made to Bill Raubolt, an employee of Weyerhaeuser, a company that supplies products to both Uline and JIT. Raubolt testified that although he could not remember precisely what Uihlein said, he believes that he said, "'Well you know, they may have a hard time paying their bills,' or something like that.'"[13]

To prove its defamation claim stemming from this statement, JIT must show (1) that Uline made a false statement about JIT; (2) Uline published that false statement to a third party; and (3) JIT was damaged as a result. *See Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 726 (7th Cir. 2004) (citing *Krasinski v. United Parcel Serv., Inc.*, 125 Ill. Dec. 310, 313, 124 Ill. 2d 483, 490, 530 N.E.2d 468, 471 (1988)). If the statement is considered defamatory *per se*, it is considered to be so harmful to the plaintiff that damages are presumed and need not be proven. *Republic Tobacco Co.*, 381 F.3d at 726 (citing *Owen v. Carr*, 100 Ill. Dec. 783, 785, 113 Ill.2d 273, 277, 497 N.E.2d 1145, 1147 (1986)). JIT argues that this statement was defamatory *per se*

---

[13]JIT's response to Uline's statement of facts suggests that Uline also made statements about JIT's products to Google and Overture. However, because JIT's reply to Uline's motion for summary judgment only addresses the statements made by Uihlein in its arguments about JIT's defamation claim, I will not consider any other statements in analyzing JIT's defamation claim.

because it consists of "words that prejudice a party, or impute lack of ability, in his or her trade, profession, or business," one of the categories of statements that is defamatory *per se* under Illinois law. *See Kolegas v. Heftel Broad. Corp.*, 180 Ill. Dec. 307, 312, 154 Ill. 2d 1, 10, 607 N.E.2d 201, 206 (1992) (internal citations omitted).

Uline argues that, to meet the first element of this test, JIT must present evidence of what specific statement was made to the third party. However, Illinois courts have held that a plaintiff must only prove "the words alleged in the declaration, or enough of them to amount to a charge of the particular offense alleged to have been imputed." *Medow v. Flavin*, 270 Ill. Dec. 174, 184, 336 Ill. App. 3d 20, 30, 782 N.E.2d 733, 742 (Ill. App. Ct. 2003) (quoting *Ranson v. McCurley*, 140 Ill. 626, 635-36, 31 N.E. 119, 121 (1892)). Here, JIT generally alleged in its complaint (as allowed by the liberal federal notice pleadings standards) that "Uline has stated to third parties that JIT is in financial trouble." It is possible from the portion of Uihlein's statement to Raubolt that Raubolt remembers that a finder of fact could conclude that Uihlein stated that JIT was in or was about to be in financial trouble.

Whether or not a jury could conclude that this statement had been made, however, it is clear that this statement is either an opinion or is subject to an innocent construction. Under Illinois law, a statement is not defamatory if it is "reasonably capable of

22

an innocent construction." *Republic Tobacco Co.*, 381 F.3d at 726 (citing *Kolegas*, 180 Ill. Dec. at 11, 154 Ill. 2d at 312, 607 N.E.2d at 206). Whether a statement is subject to an innocent construction is for a court to decide. *Kolegas*, 180 Ill. Dec. at 11, 154 Ill.2d at 313, 607 N.E.2d at 207. Taking the facts in the light most favorable to JIT, Uihlein stated that JIT "may have trouble" paying its bills. This statement is potentially forward-looking as to what JIT "may" be able to do in the future. Given that the facts show the statement was made in the context of a conversation discussing how JIT was significantly underselling Uline, it is subject to the innocent construction that any company significantly underselling a competitor might have financial difficulties in the future. It is also an opinion as to JIT's future financial status, and is therefore not actionable as defamation since a prediction of future events can neither be true nor false. *See Wilkow v. Forbes*, 241 F.3d 552, 555 (7th Cir. 2001) ("[I]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable.") (quoting *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993)).[14]  Whether an

_____

[14]A co-worker of Raubolt's testified that Raubolt "said at one point that [JIT] were [sic] in financial – financially instable or they were having some trouble paying their bills, or something to that tune." However, the co-worker could not recall specifically when that statement was made, and the statement is also

allegedly defamatory statement is an opinion is a question of law. *Moriarty v. Greene*, 247 Ill. Dec. 675, 685, 315 Ill. App. 3d 225, 234, 732 N.E.2d 730, 740 (Ill. App. Ct. 2000) (citing *Owen*, 100 Ill. Dec. at 786, 113 Ill.2d at 279, 497 N.E.2d at 1148). For these reasons, I need not address whether the statement constitutes defamation *per se*, and I grant summary judgment to Uline on this claim.

## VI.

In its letter to Overture complaining about JIT's advertisements, Uline stated that JIT's website contained misleading comparisons between Uline's products and its own. Uline's letter stated:

> Uline carries certified "200 lb test boxes". This refers to the bursting strength of the box. JIT claims 200#/ECT32, which is not an accurate representation of the product. ECT32 is often cheaper to manufacture and has different performance characteristics than 200 lb test boxes. Comparing the two as equal will mislead the consumer.

JIT argues in its reply brief that this statement constitutes commercial disparagement. In order to succeed on this claim, JIT must present evidence that this statement amounts to a "false and demeaning statement[] regarding the quality of [JIT's] goods and services." *See Appraisers Coalition v. Appraisal Inst.*, 845 F.

---

inadmissible hearsay.

24

Supp. 592, 610 (N.D. Ill. 1994).[15] This claim is different from a

defamation claim because the law of commercial disparagement

"protects property interests" only and not the "interests of

personality" protected by the law of defamation. *Allcare, Inc. v.*

*Bork*, 126 Ill. Dec. 406, 411, 176 Ill. App. 3d 993, 1000, 531

N.E.2d 1033, 1038 (Ill. App. Ct. 1988). For this reason,

complaints about a party's fraud or dishonesty in conducting its

business are not actionable as commercial disparagement because

they do not directly disparage the *quality* of its goods or

services. *Id.* at 410-11, 176 Ill. App. 3d at 1000, 531 N.E.2d at

1037-38 (noting that "in almost every case of defamation of a

business or businessman it could be alleged that the defamation

caused third parties to refrain from dealing with the plaintiff and

thus. . . constitute[] commercial disparagement").

Here, Uline's letter clearly suggested that JIT's claim that

its ECT32 box was equivalent to Uline's 200# box was inaccurate.

It stated that ECT32 was "cheaper to manufacture and has different

---

[15]JIT has brought a claim both for common law commercial
disparagement and for violation fo the Illinois Deceptive Trade
Practices Act (the "Act"). JIT's reply motion is confusing because
it simultaneously argues that a genuine issue of material fact
exists regarding its counterclaim for a violation of the Act, 815
Ill. Comp. Stat. Ann. 510/2(a)(8), and also asserts that it will
not pursue its claims under this Act. Since the section of this
Act addressing commercial disparagement is an "embodiment" of the
common law of commercial disparagement, *Crinkley v. Dow Jones &
Co.*, 24 Ill. Dec. 573, 578, 67 Ill. App. 3d 869, 876, 385 N.E.2d
714, 719 (Ill. App. Ct. 1978), and to the extent JIT is still
pursuing this claim, it fails for the same reason that JIT's common
law commercial disparagement claim would fail.

performance characteristics than 200 lb test boxes." Uline's statement that JIT's advertisements were misleading is not actionable as "commercial disparagement" because the allegation that JIT's claims were misleading is not, standing alone, a disparagement of JIT's goods. Likewise, a statement by Uline that the ECT32 box was "cheaper to manufacture" and "different" from the 200 lb box is not disparaging of the ECT32 box – it simply states that the box is different from a 200 lb test box. Uline's motion for summary judgment on this claim is granted.[16]

## VII.

JIT has also brought claims for unfair competition under common law and the Lanham Act, 15 U.S.C.A. § 1125(a) (Count V), and for violations of the Illinois Deceptive Trade Practices Act, 815 Ill. Comp. Stat. §§ 510/1, *et seq.* and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. §§ 505/1, *et seq* (Count VI). In its response to Uline's motion for summary judgment, JIT attempts to withdraw these claims and states that it will not pursue them. Uline is correct that JIT's attempt

---

[16]Even assuming this statement were considered "disparaging," JIT has provided no admissible evidence in the record from which a finder of fact could conclude this statement was false. JIT relies on very limited selections of deposition testimony of several witnesses who actually affirm that the testing procedures for the boxes are different and that ECT32 boxes are cheaper, even if some segments of the box industry consider the boxes to be similar. The printouts from various box manufacturer websites which JIT argues show that the boxes are identical or substantially similar are inadmissible hearsay.

26

to withdraw these claims voluntarily is too late under Fed. R. Civ.
P. 41(a)(1). These two claims are dismissed.

VIII.

For the foregoing reasons, I grant Uline's motion for summary
judgment as to all of JIT's counterclaims.

**ENTER ORDER:**

*Elaine E Bucklo*
_____
**Elaine E. Bucklo**
United States District Judge

Dated: June 26, 2006